UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES SIMMONS, JR.,

    Plaintiff,

v.                                                                 Case No. C-1-08-607

M & M INTERNATIONAL, INC.,

    Defendant.

**ORDER**

This matter is before the Court upon defendant's motion for summary judgment (doc. 9), plaintiff's opposing memorandum (doc. 22), and defendant's reply (doc. 29). Defendant has filed proposed findings of fact and conclusions of law, which plaintiff has highlighted as true, false, or irrelevant (doc. 34).

**I. Introduction**

Plaintiff James Simmons, Jr. brings this lawsuit against his former employer, M & M International, Inc. (M & M). Plaintiff brings claims for age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and Ohio Rev. Code § 4112.01, et seq. (Counts I and II) and claims for retaliation under the ADEA and Ohio Rev. Code § 4112.02 (Counts III and IV). Defendant moves for summary judgment in its favor on all claims and requests oral argument on the motion. Plaintiff does not oppose the motion with respect to his age discrimination claims.

**II. Request for oral argument**

1

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument is not necessary and defendant's request for same is denied.

### III. Undisputed facts

1. M & M hired plaintiff as a general laborer at its Avondale facility in Cincinnati, Ohio, on or about March 31, 1986.

2. Plaintiff was an at-will employee during his employment with M & M.

3. Plaintiff is unable to read or write.

4. Plaintiff worked under the guidance of plant manager Ron Hughes for many years until 2004, when Hughes left M & M.

5. Tim Chenot replaced Hughes as plant manager and as plaintiff's direct supervisor.

6. A slowdown in M & M's work resulted in the layoff of two M & M employees, William Gordon (age 38) and Thomas Flowers (age 27), in November 2007.

7. Plaintiff was dissatisfied that he received a lower bonus than some of his co-workers at the end of 2007.

8. Plaintiff filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC) and the Ohio Civil Rights Commission (OCRC) in March of 2008 claiming that he had been discriminated against because of his age and because he had opposed employment practices which violate the ADEA.[1] Plaintiff

---

[1] The parties allege that plaintiff filed the charges on March 10 and 13, 2008, respectively. The OCRC charge is date-stamped March 7, 2008, however (*see* plaintiff's depo., exh. 2) and the EEOC charge is date-stamped March 5, 2008 (*see id.*, exh. 4).

claimed in the EEOC charge that he had been denied a bonus equal to what his younger peers had received and that Chenot had verbally harassed him and intimidated him by threatening to lay him off when plaintiff complained to Chenot about the bonus.

9. Plaintiff received a written warning for an incident involving a forklift on March 20, 2008. He received no other discipline and there was no adverse impact on his pay or terms of employment as a result of the incident.

10. Plaintiff filed a charge with the EEOC which he dated May 3, 2008. *See* plaintiff's depo., exh. 6. The charge is date-stamped June 6, 2008. Plaintiff alleged that he had received a written warning for a safety violation in retaliation for filing his earlier charge of age discrimination with the EEOC.

11. On June 19, 2008, Chenot informed plaintiff that he was laid off. Plaintiff's employment was terminated on that date.

12. No one was hired to replace plaintiff. Instead, plaintiff's duties were distributed among existing employees Raymond Turner, George Kinzer and John Turner, who are 54, 50 and 47 years-old, respectively.

### IV. Motion for summary judgment

Defendant moves for summary judgment on plaintiff's retaliation claims on the grounds that (1) plaintiff did not have a reasonable, good faith belief that he had been the victim of age discrimination when he filed charges with the OCRC and the EEOC in March of 2008 or that he had been the victim of retaliation when he filed a charge in June of 2008, (2) the temporal proximity between plaintiff's filings and his termination is not sufficiently close to give rise to an inference of a causal connection between the two, and (3) there is no evidence of pretext as

3

plaintiff was fired for a legitimate business reason, i.e., he was the least skilled worker among a group of workers who were already underutilized due to a slowdown in business at the plant.

In response, plaintiff alleges that he can establish all of the elements of a prima facie case of retaliation. Plaintiff claims that he had a reasonable and good faith belief that he was the victim of illegal age discrimination and retaliation because he had received a smaller bonus than younger employees with similar or less tenure; the temporal proximity of just over three months between his protected activity and his termination is sufficiently close to establish a causal connection as a matter of law; and he can establish that defendant's alleged reason for terminating him is a pretext for unlawful retaliation.

## V. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. ***Anderson***, 477 U.S. at 255 (citing ***Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. ***Anderson***, 477 U.S. at 249. There is no genuine

4

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing ***Cities Serv.***, 391 U.S. at 288-289). If the evidence is merely colorable, ***Dombrowski v. Eastland,*** 387 U.S. 82, 84 (1967), or is not significantly probative, ***Cities Serv.***, 391 U.S. at 290, judgment may be granted. ***Anderson***, 477 U.S. at 249.

## VI. Applicable law

The ADEA, 29 U.S.C. § 623(d), provides that,

It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

Ohio Rev. Code § 4112.02(I) makes it illegal

[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

The same evidentiary framework applies to retaliation claims brought under Ohio law and the ADEA. ***Imwalle v. Reliance Medical Products, Inc***., 515 F.3d 531 (6th Cir. 2008). To prove a claim of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) the exercise of his civil rights was known by defendant; (3) defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. ***Ford v. Gen. Motors Co.,*** 305 F.3d 545, 552-53 (6th Cir. 2002); ***Thatcher v. Goodwill Industries of Akron,*** 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997).

An employee is protected against employer retaliation for opposing any practice that the

employee reasonably believed to be a violation of the anti-discrimination laws. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). The opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful." *Id*. at 579-580.

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not engaged in protected activity. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). Evidence that the defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. *Id.* (citing *Moon v. Transp. Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir. 1987)); *see also Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.") Where, however, "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525 (citing *Little v. BP Exploration & Oil Co*., 265 F.3d 357, 365 (6th Cir. 2001)). The Sixth Circuit in *Mickey* explained that,

> The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

6

*Id*.

"The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen,* 229 F.3d at 563. Once the plaintiff establishes a prima facie case of retaliation, the burden is on the defendant to articulate a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,* 783 F.2d 50, 54 (6th Cir. 1986). The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).

An employer's business judgment is not an absolute defense to unlawful discrimination. *Wexler v. White's Furniture, Inc*., 317 F.3d 564, 576 (6th Cir. 2003). The Court in *Wexler* addressed the extent to which the reasonableness of an employer's decision may be considered:

> [T]he reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998)) (holding that, in evaluating a proffered nondiscriminatory basis for an employment action, courts should inquire into 'whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action') (emphasis added); *In re Lewis,* 845 F.2d 624, 633 (6th Cir.1988).

*Id.*

## VII. Opinion

Upon a review of the evidence of record, the Court finds that plaintiff has come forward with sufficient evidence to raise a genuine issue of material fact as to whether defendant retaliated against him for opposing conduct that he reasonably and in good faith believed violated the anti-

7

discrimination laws. Specifically, plaintiff provided information during his deposition testimony which supports a finding that he reasonably and in good faith concluded that he received a smaller bonus because of his age. Plaintiff testified at his deposition that when he was in the office discussing the matter of his bonus with Chenot, age 53, Chenot called plaintiff "an old man" and asked him when he was going to retire. *See* plaintiff's depo., pp 63-64, 87. Plaintiff testified that based on Chenot's remarks and the fact that plaintiff was older than all the other employees at M & M, he determined that Chenot was discriminating against him because of his age. *Id*. at 63, 84, 86-87. In addition, plaintiff testified that when Chenot became the supervisor, he told the workers he was "going to get rid of you old guys and get some young blood in here," *id*. at 85; on another occasion when Chenot had called plaintiff into the office after work, he told plaintiff he was getting slow and walking around like a zombie, *id*. at 64; when Chenot hired "Johnnie" Turner (who is 16 years younger than plaintiff), Chenot told plaintiff that he was too old to be doing the work he was doing and Chenot wanted plaintiff to train Turner how to do his job, *id*. at 84-85; and on one occasion, Chenot snatched a broom out of plaintiff's hand and said he swept like an old man. *Id*. at 87.

Despite plaintiff's deposition testimony regarding Chenot's age-related remarks and why plaintiff drew a connection between those remarks and his smaller bonus, defendant argues that the deposition testimony of plaintiff's girlfriend, Deborah Roberts, unequivocally establishes that plaintiff believes Chenot was biased against him because of plaintiff's superior health and strength rather than his age. Defendant contends that Roberts' testimony precludes a finding that plaintiff reasonably believed that defendant had discriminated against him based on his age. The Court disagrees. Roberts did testify that plaintiff told her he did not get the bonus because

Chenot did not like him and was jealous of him, but Roberts further testified that plaintiff had explained to her that Chenot was jealous of him because although he was "way older" than Chenot, plaintiff was stronger and more able. *See* Roberts depo., pp. 10, 13. When asked to clarify whether she was saying that Chenot was jealous of plaintiff because Chenot is not well and plaintiff is much stronger and more able, Roberts gave the following response, which falls far short of establishing that plaintiff did not believe his age to be the reason for the smaller bonus:

> Yeah, in a sense, yeah. But the bonus part, I don't know. He just was jealous, and I just knew from before with, you know, James had told me about him being jealous. So when he said "he's jealous of me," I knew what he was talking about.

*Id*. at 14. In addition, Roberts testified that plaintiff had told her about an alleged age-related comment Chenot had made. *Id*. at 10. Thus, Roberts' testimony, considered as a whole and in conjunction with plaintiff's testimony, does not necessarily preclude a finding that plaintiff reasonably believed he had received a smaller bonus than his co-workers because of his age.

As for the June 2008 charge based on the forklift incident, plaintiff testified at his deposition that he believes he was set up for the forklift incident and then written up for it because it occurred shortly after he had filed his initial charge. *See* plaintiff's depo., p. 90. Plaintiff testified that he thought Chenot was upset about the charge he had filed because when he was complaining (presumably about his bonus), Chenot was telling plaintiff who he had laid off. *Id*. at 91. Although plaintiff's deposition testimony on this point is somewhat nebulous, because the forklift incident followed closely on the heels of the initial charge plaintiff filed, and because there is conflicting testimony as to what precisely occurred, it is for the jury to decide whether plaintiff reasonably believed he was written up for the forklift incident in retaliation for filing his age discrimination claim.

9

Turning to the final prong of the prima facie case, there are genuine issues of material fact as to whether a causal connection exists between the filing of plaintiff's charges with the OCRC and the EEOC in March and June of 2008 and his termination. Temporal proximity is sufficient to establish causality here as plaintiff was terminated approximately three months after filing his first charge and less than two weeks after filing his second charge. Moreover, although the record is sketchy concerning how and when the termination decision was reached, it appears that Chenot may have hastily made and carried out the decision shortly after the filing of plaintiff's retaliation charge with little, if any, deliberation or consultation with anyone else. *See* Chenot depo., pp. 65, 90-91.[2] A jury could infer from the temporal proximity between plaintiff's charges and his termination, coupled with the circumstances surrounding the termination decision, that there was a causal connection between plaintiff's filings and his termination.

The circumstances surrounding plaintiff's termination also raise questions as to whether the reason given for the decision is pretextual. These unanswered questions preclude the Court from resolving the pretext issue on summary judgment.

---

[2]Chenot testified that he told Jerry Mellman, an owner of the company, that he was going to lay off one man, and he believes he told Mellman this the morning he made the decision. *See* Chenot depo., pp. 90-91.

## VIII. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is **GRANTED** with respect to plaintiff's age discrimination claims (Counts I and II) and **DENIED** as to his retaliation claims (Counts III and IV). This case will proceed to trial on the retaliation claims pursuant to the schedule established by the Court.

**IT IS SO ORDERED.**

> S/ Herman J. Weber
> HERMAN J. WEBER, SENIOR JUDGE
> UNITED STATES DISTRICT COURT